IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | | |
|---|---|---|
| ARNON COLLINS, | ) | Case No. 3:19-cv-150 |
| | ) | |
| Petitioner, | ) | JUDGE PAMELA A. BARKER |
| | ) | |
| v. | ) | MAGISTRATE JUDGE |
| | ) | THOMAS M. PARKER |
| NEIL TURNER, WARDEN, | ) | |
| | ) | |
| Respondent. | ) | **REPORT AND RECOMMENDATION** |
| | ) | |

Arnon Collins, an Ohio prisoner serving a 12-year prison term after he was convicted of illegal manufacturing of drugs, failure to comply with an order or signal of a police officer, illegal use or possession of drug paraphernalia, illegal assembly or possession of chemicals for manufacture of drugs, and aggravated possession of drugs, seeks a writ of habeas corpus under 28 U.S.C. § 2254.  Collins claims that his convictions and sentences in *State v. Collins*, Preble Cty. Ct. Comm. Pl. Case No. 2015-CR-11802, violated his constitutional rights.[1]  ECF Doc. 1.  Respondent, Warden Neil Turner, filed a return of writ on June 7, 2019.  ECF Doc. 7.  Collins, through counsel, filed a traverse on February 18, 2020.  ECF Doc. 8.  This matter is before me by an automatic order of reference under Local Rule 72.2 for preparation of a report and

---

[1] Although Preble County Court of Common Pleas is in the Southern District of Ohio, this court has jurisdiction over Collins's petition because North Central Correctional Institution – the prison where Collins is housed – is in the Northern District of Ohio.  *See* 28 U.S.C. § 2241(d) (giving concurrent jurisdiction to the district court for the location where the habeas petitioner is in custody and the district court for the location where the petitioner was convicted).  A search of the Southern District of Ohio's docket does not show that Collins has filed a habeas petition in that court.

recommendation on Collins's petition.[2]  I recommend that the court: (1) DISMISS Collins's Ground One claim, in part, and his Grounds Two and Three claims; and (2) DENY, in part, Collins's Ground One claim on the merits; and (3) DENY Collins's petition of writ of habeas corpus (ECF Doc. 1).  I further recommend that Collins not be granted a certificate of appealability.

## I.  State Court History

### A.  State Trial Court, Case No. 2015-CR-11802

#### 1.  Indictment & Original Plea Offer

On August 3, 2015,  a Preble County, Ohio, grand jury indicted Collins on: one count of illegal manufacture of drugs in violation of Ohio Rev. Code § 2925.04(A), (C)(2) ("Count 1"); one count of illegal assembly or possession of chemicals for the manufacture of drugs in violation of Ohio Rev. Code § 2925.041(A), (C) ("Count 2"); one count of failure to comply with an order or signal of a police officer in violation of Ohio Rev. Code § 2921.331(B), (C)(6)(a)(ii) ("Count 3"); and one count of illegal use or possession of drug paraphernalia in violation of Ohio Rev. Code § 2925.14(C)(1), (F)(1) ("Count 4").  ECF Doc. 7-1 at 5-6. Specifically, the indictment alleged that Collins: (1) possessed chemicals to manufacture and did manufacture methamphetamine; (2) attempted to flee the police after they had signaled him to stop his car; and (3) used or possessed with the intent to use drug paraphernalia.  ECF Doc. 7-1 at 5-6.

On August 27, 2015, the state offered to move for dismissal of all remaining counts and seek no more than a mandatory five-year prison term if Collins agreed to plead guilty to the single count of illegal manufacture of drugs.  ECF Doc. 7-1 at 92.  The state also warned that if

---

[2] Chief Judge Patricia A. Gaughan also issued a differentiated case management initial order for administrative track cases reflecting the automatic order of reference.  ECF Doc. 2.

Collins did not agree by October 2, 2015, the state would seek a superseding indictment to add a possession of methamphetamine charge that would carry a mandatory 11-year prison term.  ECF Doc. 7-1 at 92.  From August 27 through October 2, 2015, defense counsel attempted to negotiate an offer that would involve an agreed recommended sentence of three years instead of five years.  ECF Doc. 7-1 at 93.  Defense counsel and Collins also considered filing a motion to suppress during that time, which the Preble County Prosecutor's Office indicated would result in the rescission of their plea offer.  ECF Doc. 7-1 at 93.  Collins did not accept the plea offer by the October 2, 2015, deadline.  ECF Doc. 7-1 at 92.

On October 5, 2015, a Preble County, Ohio, grand jury issued a superseding indictment adding to the charges against Collins one count of aggravated possession of drugs, in violation of Ohio Rev. Code § 2925.11(A), (C)(1)(e).  ECF Doc. 7-1 at 10.  The count also carried a major drug offender specification under Ohio Rev. Code §§ 2929.01, 2941.1410(A) because the offense involved the possession of, sale of, or offer to sell at least 1,105.01 grams of methamphetamine.  ECF Doc. 7-1 at 10.

### 2.     Motion to Suppress & Motion for *Franks* Hearing

On January 23, 2016, Collins filed a motion to suppress.  ECF Doc. 7-1 at 11-21.  The motion sought to suppress evidence found during a search made pursuant to a warrant, including: "black hoses, glass and plastic dishes, a pill grinder, Sudafed packs, a glass smoking pipe, a digital [p]H tester, [p]H strips, an electric hot plate, a rubber mask, mason jars with liquid, and other materials allegedly for the manufacture of meth."  ECF Doc. 7-1 at 13.  Collins argued that the search should be regarded as an unreasonable, warrantless search because: (1) the search warrant "was issued pursuant to an unlawful preceding search;" and (2) the warrant application "did not contain sufficient facts so as to establish probable cause."  ECF Doc. 7-1 at 14.  Collins

asserted that the search preceding the warrant was unlawful because, although the officers had limited consent (from Collins's mother) to search Collins's bedroom in his parents' house, they exceeded the scope of consent by continuing to the back yard, searching behind the large barn, and looking into the parked car where they found items believed to be related to meth production. ECF Doc. 7-1 at 14-17. Further, Collins contended that the facts in the affidavit were insufficient because the officers did not include source, credibility, or subject-matter information supporting the statement that the officers received "tips and intelligence" regarding Collins's involvement with meth. ECF Doc. 7-1 at 19-20. Collins also filed two supplemental motions, adding a request for a *Franks* hearing to challenge the content of the search warrant affidavit. ECF Doc. 7-1 at 72-84.

On April 15, 2016, the trial court denied Collins' motion for a *Franks* hearing. ECF Doc. 7-1 at 85-86. The trial court determined that Collins's supplemental brief and attached affidavit met the first prong for a *Franks* hearing – a substantial preliminary showing that the warrant affiant may have made a false statement. ECF Doc. 7-1 at 85-86. Nevertheless, the court denied Collins's motion for a *Franks* hearing because he failed to meet the second prong – whether the allegedly false statement was material. ECF Doc. 7-1 at 86. Specifically, the court explained that – even if the court were to strike the officer's statements about what he saw behind the barn from the warrant affidavit – probable cause for a search warrant would be supported by the officer's statements that:

> The defendant was arrested right prior to the search. In his possession were 4.9 grams of "wet" (just made) methamphetamine. The defendant has convictions for Illegal Manufacture of Drugs, Attempted Illegal Assembly of Chemicals for the Manufacture of Drugs, Possession of Cocaine and Aggravated Possession of Drugs. When officers attempted to serve a warrant on the defendant four days before at the front and rear doors of the residence, they smelled anhydrous ammonia emitting from a large trash can at the rear of the residence. Thereafter, Deputy Hatfield checked NPLEX and found from March 14, 2015 to July 14,

4

2015, the defendant had purchased Sudafed twelve (12) times and had been blocked four (4) times.  Deputy Hatfield's training and experience have educated him that frequently drug traffickers/manufacturers conceal and transport narcotics in motor vehicles making it necessary to search any and all motor vehicles found at the places to be searched.  . . .  It was not JUST "meth paraphernalia."  It is very noteworthy that "wet" meth was found.  Such was recently made.  That, certainly coupled with the noted smell of anhydrous, the excessive purchasing of Sudafed and the defendant's prior convictions for manufacturing and possession of chemicals for the manufacture of drugs is a sufficient probable cause for a search of the defendant's entire property including automobiles located therein.

ECF Doc. 7-1 at 86.

On April 18, 2016, the trial court held a suppression hearing.  ECF Doc. 7-2.  The court heard testimony from Deputy Shane Hatfield to establish a foundation for admission of the search warrant and affidavit.  ECF Doc. 7-2 at 3-8, 10-12.  Concluding that the search warrant affidavit contained "more than ample" facts supporting probable cause to search Collins's residence, the court denied Collins's motion to suppress.  ECF Doc. 7-2 at 13; *see also* ECF Doc. 7-1 at 87.

### 3.    Motion to Withdraw as Counsel

On May 2, 2016, Collins's attorney filed a motion to withdraw as counsel.  ECF Doc. 7-1 at 88.  Counsel stated that a conflict arose between him and Collins because Collins believed counsel did not properly and clearly advise him about the state's earlier plea offer and the possible consequences of rejecting it.  ECF Doc. 7-1 at 88.  Counsel also asked that the court continue the trial, which was scheduled for May 9, 2016.  ECF Doc. 7-1 at 88.

On May 6, 2016, the trial court granted the motion and appointed new counsel.  ECF Doc. 7-1 at 90; ECF Doc. 7-3 at 5-9.  The trial court also continued trial until June 27, 2016.  ECF Doc. 7-1 at 90; ECF Doc. 7-3 at 9-10.

### 4.    Motion to Compel Original Plea Offer

On June 17, 2016, Collins, through new counsel, filed a motion to compel the prosecutor to reinstate the original plea offer.  ECF Doc. 7-1 at 91.  Collins argued that he did not fully understand the terms of the offer.  ECF Doc. 7-1 at 91.  The trial court denied Collins's motion on August 1, 2016.  ECF Doc. 7-1 at 92-95.  The court determined that Collins could not show that ineffective assistance of counsel resulted in his decision to reject the plea offer, as required under *Lafler v. Cooper*, 566 U.S. 156 (2012), because: (1) counsel advised Collins of the offer on August 27, 2015, shortly after it was proposed; (2) counsel apprised Collins of the consequences of accepting or rejecting the offer; (3) Collins and counsel discussed the possibility of filing a motion to suppress and agreed to continue negotiating for a better plea offer; and (4) Collins, despite counsel's advice to accept the offer, made the choice to reject it.  ECF Doc. 7-1 at 93-95; *see also* ECF Doc. 7-3 at 21-30 (counsel's hearing testimony).

## 5.    Plea & Sentence

The trial court conducted a change-of-plea colloquy on September 12, 2016.  ECF Doc. 7-3 at 49-59.  The trial court warned Collins that, although a "no contest" plea did not admit guilt, he would be "essentially admitting the facts contained in any charging document" and that the court would find him guilty because the facts alleged in the charging documents were sufficient.  ECF Doc. 7-3 at 49.  The court also informed Collins he did not waive his right to appeal his conviction or the court's denial of his motions to suppress, for a *Franks* hearing, and to reinstate his plea offer.  ECF Doc. 7-3 at 50.  Collins testified that he understood.  ECF Doc. 7-3 at 49-50.  Collins also testified that he heard the court describe the constitutional trial rights waived by entering a plea, and that he understood his "no contest" plea waived those rights. ECF Doc. 7-3 at 51.  The court also described the mandatory minimum and maximum penalties associated with the charges against Collins, and Collins testified that he understood.  ECF Doc.

7-3 at 51-52.  The court read each charge and specification, and Collins stated that he pleaded "no contest" to each.  ECF Doc. 7-3 at 52-59.

Collins signed a written "plea of no contest and waiver of trial by jury."  ECF Doc. 7-1 at 96-101.  The written plea stated that Collins knowingly, voluntarily, and intelligently withdrew his "not guilty" plea and wished to plead "no contest" to all the charges against him.  ECF Doc. 7-1 at 97-98.  Collins recited that he understood his plea waived his rights to a jury trial and to call, compel, and confront witnesses.  ECF Doc. 7-1 at 98.  He indicated that he understood the maximum and mandatory minimum prison sentences and fines associated with each of the charged offenses, that any terms of probation or community control could be revoked, that he could be ordered to pay court costs, and that he would be subject to a mandatory period of 5-years post-release control following any prison term imposed.  ECF Doc. 7-1 at 99-100.  Collins stated that he was not under the influence of any substances, was advised by his attorney of all the facts and circumstances regarding the charges against him, was not induced to enter his plea by any threats or promises, and wished to enter his plea because "[p]leading no contest is what I want to do."  ECF Doc. 7-1 at 96, 100-01.

The trial court accepted Collins's "no contest" plea and found him guilty of each of the charged offenses.  ECF Doc. 7-3 at 59.  The trial court proceeded to impose sentence at the same hearing.  ECF Doc. 7-3 at 59-69.  The court found that Counts 2 and 4 merged with Count 1, and sentenced Collins to: (1) a mandatory 3-year prison term on Count 1; (2) a mandatory 11-year prison term on Count 5, to be served concurrently with the term imposed for Count 1; and (3) a one-year prison term on Count 3, to be served consecutively to the terms imposed for Counts 1 and 5.  The aggregate sentence was twelve years.  ECF Doc. 7-1 at 102-03; ECF Doc. 7-3 at 59-

69. The court also ordered that Collins serve a five-year term of post-release control after his prison terms expired. ECF Doc. 7-1 at 103.

### B. Direct Appeal, Case No. CA-2016-09-009

On September 20, 2016, Collins, through his replacement trial court counsel, filed a notice of appeal to the Ohio Court of Appeals. ECF Doc. 7-1 at 106. Collins's appellate brief raised the following assignments of error:

1. The trial court erred when it failed to sustain Appellant's *Franks* motion.

2. The trial court erred when it failed to compel the State to reinstate the original plea offer.

ECF Doc. 7-1 at 111, 113-17. Specifically, Collins argued that the court should have granted his motion for a *Franks* hearing because his mother's affidavit created a genuine issue as to the scope of consent given for the preceding search and because *Franks* required a hearing be held upon the defendant's motion. ECF Doc. 7-1 at 114-15. Further, Collins argued that the trial court should have granted his motion to compel the state to reinstate its plea offer because counsel rendered ineffective assistance when Collins: (1) believed that the plea deal would be still available or better after he filed a motion to suppress; and (2) did not know that he would be sentenced to a 12-year prison term if the state sought a superseding indictment. ECF Doc. 7-1 at 116-17.

On June 19, 2017, the Ohio Court of Appeals affirmed Collins's convictions and sentences. ECF Doc. 7-1 at 141-50. The Ohio Court of Appeals agreed with the trial court that, even assuming Collins could satisfy the first prong under *Franks*, he could not show that the warrant affidavit lacked sufficient facts to support probable cause even when the evidence discovered upon the inspection of Collins's vehicle was excluded. ECF Doc. 7-1 at 147-48. Thus, the trial court decision denying Collins's motion for a *Franks* hearing was not clearly

erroneous.  ECF Doc. 7-1 at 148.  The court also determined that the trial court did not commit

clear error in denying Collins's motion to compel the state to reinstate its plea offer because the

record showed that counsel had timely explained the terms of the plea offer to Collins, notified

Collins of the state's deadline, advised Collins to accept the offer, and thoroughly discussed the

consequences of not accepting the offer during an hour-long session on October 1, 2015.  ECF

Doc. 7-1 at 149-50.

### C.      Ohio Supreme Court, Case No. 2017-0919

On July 7, 2017, Collins, through new counsel, filed a notice of appeal to the Ohio

Supreme Court.  ECF Doc. 7-1 at 152.  Collins's memorandum in support of jurisdiction raised

two propositions of law:

> I.   Under Ohio law the decision to plead is governed by a subjective test which
>      must be applied when determining if a plea was knowingly, intelligently, and
>      voluntarily made
>
> II.  Prior bad acts evidence may not be used as the basis of an affidavit for a
>      search warrant

ECF Doc. 7-1 at 154, 157-61.  In his first proposition of law, Collins appears to have argued that

the trial court erroneously failed to determine whether he knowingly, intelligently, and

voluntarily rejected the state's plea offer when he was "confused by the plea discussion" in

which counsel had explained the terms of the plea and consequences of rejecting it.  ECF Doc. 7-

1 at 158-59.  In his second proposition of law, Collins argued that the trial court erred in

determining that the additional information in the warrant affidavit could have supported a

finding of probable cause because it consisted only of statements that Collins was a bad person

and character evidence cannot provide probable cause.  ECF Doc. 7-1 at 159-61.  On January 31,

2018, the Supreme Court of Ohio declined jurisdiction.  ECF Doc. 7-1 at 172.

Collins did not appeal to the U.S. Supreme Court.

### D.  Motion to Withdraw Guilty Plea

On June 19, 2018, Collins, through counsel, filed a "motion to withdraw plea."  ECF Doc. 7-1 at 173-77.  In his motion, Collins argued that he did not understand his plea or its implications because he had a history of psychosis and drug/alcohol addiction that may have impaired his judgment.  ECF Doc. 7-1 at 174-77.  On July 18, 2019, the trial court denied Collins's motion.  ECF Doc. 7-1 at 197-98.  The trial court explained that *res judicata* barred Collins's argument that his plea was not knowing, voluntary, or intelligent because he did not raise that argument on direct appeal.  ECF Doc. 7-1 at 197-98.

On August 15, 2018, Collins appealed to the Ohio Court of Appeals.  ECF Doc. 7-1 at 199.  On appeal, Collins reiterated the same arguments he made before the trial court – adding that "he was hearing voices and did not know what was happening" when he entered his "no contest" plea.  ECF Doc. 7-1 at 207-08.  On March 4, 2019, the Ohio Court of Appeals dismissed Collins's appeal for lack of jurisdiction.  ECF Doc. 7-1 at 220.  The court explained that the trial court lacked jurisdiction to decide Collins's motion because the appellate court had affirmed Collins's conviction on direct appeal and no higher court issued a remand.  ECF Doc. 7-1 at 224. Thus, because the trial court lacked jurisdiction, its order denying Collins's motion was void and the court of appeals lacked jurisdiction to hear an appeal from it.  ECF Doc. 7-1 at 224-25.

## II.  Federal Habeas Petition

On January 21, 2019, Collins filed his petition for writ of habeas corpus.  ECF Doc. 1. Collins's petition raises three grounds for relief:

GROUND ONE:  Ineffective Assistance of Counsel

**Supporting Facts:**  Counsel offered the petitioner a plea offer one day prior to trial.  Appellant was confused with a history of psychosis and withdrawal from drugs.  Counsel had sought to withdraw from representation.  Further, the appeals court failed to apply the proper subjective test to the plea.

10

**GROUND TWO:**  Use of prior bad acts evidence in search warrant

**Supporting Facts:**  This matter was raised in the context of a <u>Franks</u> motion to suppress.  The court of appeals affirmed the decision of the trial court citing prior, unrelated bad acts, basically stating only that petitioner was a bad person.  A warrant cannot be based solely on character evidence.

**GROUND THREE:**  Use of improper test to determine validity of plea violating petitioner's due process rights

**Supporting Facts:**  Ohio uses a subjective test to determine if a plea was knowing, voluntary, and intelligent.  This test was not applied by the court of appeals.

ECF Doc. 1 at 6, 8-9, 19-23.

## III.    Applicable Legal Standards

### A.    AEDPA Review

A state prisoner's claims for habeas corpus relief are governed by the Antiterrorism and Effective Death Penalty Act of 1996, Pub. L. 104-132, 110 Stat. 1214 ("AEDPA"), which established a standard of review that gives significant deference to the decisions made by the state courts on the federal constitutional issues raised in a habeas corpus petition.  *See Penry v. Johnson*, 532 U.S. 782, 791 (2001); *Wilson v. Parker*, 515 F.3d 682, 691 (6th Cir. 2008). AEDPA imposes a "highly deferential standard for evaluating state-court rulings," *Lindh v. Murphy*, 521 U.S. 320, 333 n. 7 (1997), and "demands that state-court decisions be given the benefit of the doubt," *Woodford v. Visciotti*, 537 U.S. 19, 24 (2002) (per curiam).

When the claim presented in a habeas corpus petition ***has*** been presented to and decided on the merits by the state courts, a federal habeas court may not grant relief unless the state court's decision was contrary to or an unreasonable application of clearly established federal law or based on an unreasonable determination of the facts in light of the evidence that was presented.  28 U.S.C. § 2254(d) provides:

>An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim-
>
>>(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
>>(2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

In applying this statute, the Supreme Court has held that "[t]he focus . . . is on whether the state court's application of clearly established federal law is objectively unreasonable . . . an unreasonable application is different from an incorrect one." *Bell v. Cone*, 535 U.S. 685, 694 (2002).  To obtain habeas corpus relief, a petitioner must show the state court's decision was "so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fair minded disagreement. *Bobby v. Dixon*, 565 U.S. 23, 24, (2011) (quoting *Harrington v. Richter*, 562 U.S. 86 (2011)).  This standard is "difficult to meet" because "habeas corpus is a 'guard against extreme malfunctions in the state criminal justice systems,' not a substitute for ordinary error correction through appeal." *Harrington*, 562 U.S. at 102-103 (quoting *Jackson v. Virginia*, 443 U.S. 307, 332, n. 50, (1979) (Stevens, J., concurring in judgment)).  In short, "[a] state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." *Id.* (quoting *Yarborough v. Alvarado*, 541 U.S. 652, 664, (2004). "The question under AEDPA is not whether a federal court believes the state court's determination was incorrect but whether that determination was unreasonable – a substantially higher threshold."  *Schriro v. Landrigan*, 550 U.S. 465, 473 (2007).

12

## B.    Exhaustion and Procedural Default

"Before [a federal court may] reach the merits of a habeas petition, . . . [it must] review whether the petitioner has satisfied the [two] procedural requirements for litigating his federal claim in state court."  *Gerth v. Warden, Allen Oakwood Corr. Inst.*, 938 F.3d 821, 826 (6th Cir. 2019) (citing *Bickham v. Winn*, 888 F.3d 248, 250-51 (6th Cir. 2018), and *Seymour v. Walker*, 224 F.3d 542, 550 (6th Cir. 2000)).  "First, the petitioner must [have] exhaust[ed] all available opportunities to pursue his claim in state court before he may litigate that claim in federal court." *Id.* at 826-827 (noting that this requirement, rooted in the principles of comity and federalism, seeks to "avoid the unseemly result of a federal court upsetting a state court conviction without first according the state courts an opportunity to correct a constitutional violation" (internal quotations and alterations omitted); 28 U.S.C. § 2254(b)(1)(A).  Here, the petitioner must have given the state courts "one full opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate review process."  *O'Sullivan v. Boerckel*, 526 U.S. 838, 845 (1999); *Manning v. Alexander*, 912 F.2d 878, 881 (6th Cir. 1990).  Nevertheless, petitioners are only required to have pursued *available* remedies and are not required to pursue *clearly futile* state remedies.  *See Engle v. Isaac*, 456 U.S. 107, 125 n.28 (1982); *Wiley v. Sowders*, 647 F.2d 642, 647 (6th Cir. 1981); *see also Woodford v. Ngo*, 548 U.S. 81, 92-93 (2006) ("[S]tate-court remedies are . . . 'exhausted' when they are no longer available, regardless of the reason for their unavailability.").

"Second, and relatedly, the procedural default doctrine bars [federal habeas] review if the petitioner has not followed the state's procedural requirements for presenting his claim in state court."  *Gerth*, 938 F.3d at 827.  In this context, federal habeas review is barred when the petitioner failed to: (1) comply with a state procedural rule that prevented the state courts from

13

reaching the merits of the petitioner's claim; or (2) fairly present the claim before the state courts while state remedies were still available.  *Wainwright v. Sykes*, 433 U.S. 72, 80, 84-87 (1977); *Engle*, 456 U.S. at 125 n.28 (1982); *Williams v. Anderson*, 460 F.3d 789, 806 (6th Cir. 2006).  To determine whether an Ohio procedural rule bars habeas review, courts in the Sixth Circuit apply a four-part test: (1) did the petitioner fail to comply with an Ohio procedural rule?; (2) do Ohio courts regularly enforce that rule?; (3) is the rule an adequate and independent state ground for denying review of a constitutional claim?; and (4) can the petitioner show cause and prejudice excusing the default?  *Maupin v. Smith*, 785 F.2d 135, 138 (6th Cir. 1986); *Williams v. Coyle*, 260 F.3d 684, 693; *see also Gerth*, 938 F.3d at 829-830 (holding that Ohio's *res judicata* doctrine is an adequate and independent state procedural ground that Ohio courts regularly apply).

When the respondent asserts that the petitioner failed to "fairly present" his claim in state court, the court looks to: (1) whether the petitioner failed to assert both the legal and factual basis for his claim through the state's ordinary review process; and (2) whether state law no longer allows the petitioner to raise his claim at the time he filed his federal habeas petition.  *Williams*, 460 F.3d at 806 (citing *O'Sullivan*, 526 U.S. at 848, and *McMeans v. Brigano*, 228 F.3d 674, 681 (6th Cir. 2000)).  Most importantly, the "'petitioner must present his claim to the state courts as a federal constitutional issue – not merely as an issue arising under state law.'"  *Id.* (quoting *Koontz v. Glossa*, 731 F.2d 365, 368 (6th Cir. 1984)).  "Issues not presented at each and every level [of the state courts] cannot be considered in a federal habeas corpus petition."  *Baston v. Bagley*, 282 F. Supp. 2d 655, 661 (N.D. Ohio 2003) (citing *Buell v. Mitchell*, 274 F.3d 337 (6th Cir. 2001), *Scott v. Mitchell*, 209 F.3d 854, 865-68 (6th Cir. 2000), and *Leroy v. Marshall*, 757 F.2d 94 (6th Cir. 1985)).

14

Procedural default may be excused on two bases.  First, the petitioner's procedural default may be excused if he shows cause and prejudice, *i.e.* that: (1) an external factor to the defense, which cannot be fairly attributed to him, prevented him from complying with the state procedural rule; and (2) actual prejudice resulted from the alleged constitutional violation. *Coleman v. Thompson*, 501 U.S. 722, 750 (1991).  In assessing prejudice, the court assumes that the petitioner has stated a meritorious constitutional claim and proceeds to discern whether a different outcome would have resulted absent the assumed constitutional error.  *Moore v. Carlton*, 74 F.3d 689, 691-92 (6th Cir. 1996); *Mason v. Mitchell*, 320 F.3d 604, 629 (6th Cir. 2003); *see also United States v. Frady*, 456 U.S. 152, 170-72 (1982).  Second, a procedural default may be excused if denying review of the petitioner's claims would result in a "fundamental miscarriage of justice."  *Coleman*, 501 U.S. at 750.  "A fundamental miscarriage of justice results from the conviction of one who is 'actually innocent.'"  *Lundgren v. Mitchell*, 440 F.3d 754, 764 (6th Cir. 2006) (citing *Murray v. Carrier*, 477 U.S. 478, 496 (1986)).  Actual innocence means "factual innocence, not mere legal insufficiency," *Bousley v. United States*, 523 U.S. 614, 623 (1998), and must be supported with "new reliable evidence . . . that was not presented at trial," *Schlup v. Delo*, 513 U.S. 298, 324 (1995).

### C.    Cognizability

A claim that alleges only violations of state law is not cognizable in a federal habeas case, and it must be dismissed on that basis unless the state court's state-law ruling violates a federal constitutional right.  *See Estelle v. McGuire*, 502 U.S. 62, 68 (1991) ("It is not the province of a federal habeas court to reexamine state-court determinations on state-law questions.  In conducting habeas review, a federal court is limited to deciding whether a conviction violated the Constitution, laws, or treaties of the United States."); *Lewis v. Jeffers*,

497 U.S. 764, 780 (1990) ("[F]ederal habeas corpus relief does not lie for errors of state law.").

Further, a petitioner may not convert a claim asserting state law error into a constitutional claim, merely by alleging that the failure to follow a state rule violated his due process rights. *Rivera v. Illinois*, 556 U.S. 148, 158 (2009) ("The Due Process Clause . . . safeguards not the meticulous observance of state procedural prescriptions, but "the fundamental elements of fairness in a criminal trial."); *see also Engle v. Isaac*, 456 U.S. 107, 121 n.21 (1982) ("We have long recognized that a 'mere error of state law' is not a denial of due process.") (citation omitted). Moreover, "a state court's interpretation of state law, including one announced on direct appeal of the challenged conviction, binds a federal court sitting in habeas corpus." *Bradshaw v. Richey*, 546 U.S. 74, 76 (2005) (citing *Estelle*, 502 U.S. at 67-68); *see also Allen v. Morris*, 845 F.2d 610, 614 (6th Cir. 1988) (stating that a federal habeas court does not function as an additional state appellate court reviewing state courts' decisions on state law or procedure).

Nevertheless, state court rulings on issues of state law may rise to the level of due process violations if they "'offend[] some principle of justice so rooted in the traditions and conscience of our people as to be ranked as fundamental.'" *Seymour v. Walker*, 224 F.3d 542, 552 (6th Cir. 2000) (quoting *Montana v. Egelhoff*, 518 U.S. 37, 43 (1996)). Such rulings must be "so egregious that [they] result in a denial of fundamental fairness." *Bugh v. Mitchell*, 329 F.3d 496, 512 (6th Cir. 2003). Fundamental fairness under the Due Process Clause is compromised when "the action complained of . . . violates those 'fundamental conceptions of justice which lie at the base of our civil and political institutions,' . . . and which define 'the community's sense of fair play and decency.'" *Dowling v. United States*, 493 U.S. 342, 352 (1990) (internal citations omitted). Thus, courts "have defined the category of infractions that violate 'fundamental fairness' very narrowly." *Id.*

16

**IV.**   **Facts**

Analysis of Collins's petition begins with the facts recited in the Ohio Court of Appeals' opinion on direct appeal.  These factual findings are presumed correct unless Collins rebuts them by clear and convincing evidence.  28 U.S.C. § 2254(e)(1); *Wiggins v. Smith*, 539 U.S. 510, 528-29 (2003); *Burt v. Titlow*, 571 U.S. 12, 18 (2013).  The Ohio Court of Appeals found the following facts:

> {¶3} According to the original complaint filed in this matter, the charges stemmed from the events occurring on July 14, 2015.  On that date, Deputy Shane Hatfield of the Preble County Sheriff's Office was traveling northbound on Jordan Road located within Preble County when he noticed Collins driving a motorcycle southbound on that same road. Knowing that Collins had three active felony warrants for his arrest in Montgomery County, Deputy Hatfield turned his cruiser around and began pursuit of Collins with both his lights and siren activated. Collins did not stop[,] and a high-speed chase ensued with speeds reaching approximately 80 miles per hour.
>
> {¶4} After turning off Jordan Road onto Enterprise Road, the chain broke on Collins' motorcycle, which caused Collins to abandon the motorcycle and continue his attempt to escape from Deputy Hatfield on foot.  During this time, Deputy Hatfield observed Collins wearing a black backpack.  Deputy Hatfield eventually caught up with Collins and placed him under arrest.  Deputy Hatfield then conducted a search of Collins incident to his arrest and discovered within the black backpack approximately five grams of "wet," recently made, methamphetamine, as well as a glass smoking pipe with burn marks, marijuana, a variety of unidentified pills, a digital scale, and a cell phone.
>
> {¶5} Following Collins' arrest, Deputy Hatfield and Detective Robert Schneider responded to Collins' residence located at 4371 Jordan Road, Lewisburg, Preble County, Ohio.  Once there, the complaint indicates Deputy Hatfield and Detective Schneider received consent to search the property from Collins' parents.
>
> {¶6} Upon searching the property, Deputy Hatfield and Detective Schneider located Collins' vehicle parked behind a barn, which, upon looking through the windows, Deputy Hatfield could see in plain view several items associated with the manufacture of methamphetamine.  A search warrant was then obtained that resulted in additional items associated with the manufacture of methamphetamine being discovered.  It is undisputed that Deputy Hatfield's warrant affidavit stated that he, Deputy Brad Moore, and Detective Schneider, responded to the Collins residence where they then "received consent to search the property from Collins' mother[.]"

{¶7} On August 4, 2015, Attorney Brian Muenchenbach ("Attorney Muenchenbach") entered his appearance as Collins' trial counsel.  Approximately three weeks later, on August 27, 2015, the state faxed Attorney Muenchenbach a plea offer asking Collins to plead guilty to illegal assembly or possession of chemicals for the manufacture of drugs in violation of R.C. 2925.041 (A), a third-degree felony that carried a mandatory five-year prison term due to Collins' prior drug convictions.  In exchange for Collins' guilty plea to this single charge, the state agreed to dismiss the remaining charges in the indictment.  The plea offer further stated, in pertinent part, the following:

> The original indictment did not contain the F3 Aggravated Possession of Drugs count contained in the original complaint.  The State has received a lab report that makes possession of meth an F1 with a mandatory 11 year prison term.  Therefore, should the Defendant not accept the agreed 5 year prison term, the State will supersede the indictment at October's grand jury[.]

The plea offer also specifically stated that the offer was to expire one month later on September 28, 2015.  The deadline to accept the plea offer was later extended to October 2, 2015.

{¶8} On October 2, 2015, contrary to Attorney Muenchenbach's advice, Collins rejected the state's plea offer.  As Attorney Muenchenbach later testified, "we had a long conversation about it, and we decided that, Mr. Collins decided that he was going to take his chances with the suppression, and decided to reject the offer at that point."  As a result, and just as the state said it would, on October 5, 2015, the Preble County Grand Jury returned a superseding indictment that included an additional charge of aggravated possession of drugs in violation of R.C. 2925.11(A), a first-degree felony that included a major drug offender specification under R.C. 2941.1410(A), a charge that carried a mandatory 11-year prison term.

{¶9} On January 29, 2016, Collins filed a motion to suppress. . . .  Attached to Collins' motion requesting a Franks hearing was an affidavit from his mother that stated she had not given Deputy Hatfield or Detective Schneider consent to search "the property" as alleged by Deputy Hatfield.  Rather, the affidavit submitted by Collins' mother indicated she had merely consented to Deputy Hatfield and Detective Schneider's request to "look around" Collins' bedroom, and that, when Deputy Hatfield and Detective Schneider tried to search "additional areas of the home," she "told the officers no, they could not look [at] additional places."

* * *

{¶12} On June 17, 2016, . . . the trial court determined that Attorney Muenchenbach's testimony regarding his representation of Collins during the plea

18

negotiations was credible and that any confusion on the behalf of Collins was not the result of any deficient performance on the part of Attorney Muenchenbach.

{¶13} . . . Attorney Muenchenbach advised Collins of the terms of plea offer shortly after it was received from the state, notified Collins that the offer would have to be accepted before October 2, 2015, and advised Collins that he should accept the plea offer, but that the decision to accept the state's offer was ultimately Collins' decision to make.  The trial court also found Attorney Muenchenbach had spent an hour visiting Collins in jail on October 1, 2015, the day before the state's deadline to accept the plea offer expired, during which time the plea offer and the potential consequences for rejecting the state's offer "were thoroughly discussed."

* * *

{¶22} . . . Deputy Hatfield's warrant affidavit states (1) both he and Detective Schneider had recently received several tips and other intelligence that Collins had been seen manufacturing methamphetamine at his home, including information from a neighbor who suspected Collins of making methamphetamine from the back of his car; (2) Collins had a long criminal history that included convictions for illegal manufacture of drugs, attempted illegal assembly of chemicals for the manufacture of drugs, and aggravated possession of drugs; (3) four days earlier, when attempting to serve a warrant for Collins' arrest, Deputy Hatfield smelled a slight odor of anhydrous ammonia, a precursor of methamphetamine production, emanating from a large trash can at the rear of the home: (4) Collins had purchased Sudafed 12 times (and had been denied an additional four times) over the previous four months; and, (5) Collins had just been arrested and found to be in possession of 4.9 grams of "wet" methamphetamine indicating the drug was only recently made.  Deputy Hatfield further averred that, based on his training and experience, drug traffickers and drug manufacturers "frequently conceal and transport narcotics in motor vehicles," thereby making it necessary to search any motor vehicle located on the property.

* * *

{¶29} After a thorough review of the record, we find no error in the trial court's decision to deny Collins' request to compel the state to reinstate its previous plea offer.  While Collins testified that he was confused about the plea deal offered by the state, just as the trial court found, any confusion was not the result of any deficient performance on the part of Attorney Muenchenbach.  Rather, as the record reveals, and as discussed above, Attorney Muenchenbach notified Collins of the terms of the state's plea offer and the deadline to accept the plea offer.  Attorney Muenchenbach further advised Collins to accept the plea offer, but that the decision was ultimately Collins' decision to make. Collins, against the advice of attorney Muenchenbach, rejected the plea offer.  As the trial court stated, "[i]n

19

the end, he made his choice."  We agree.  Therefore, because Attorney
Muenchenbach performance during plea negotiations was not deficient, it simply
cannot be said that Collins suffered any resulting prejudice that would necessitate
requiring the state to reoffer its previously rejected plea deal.

ECF Doc. 7-1 at 142-150.

## V.    Analysis

### A.    Ground One

In his Ground One claim, Collins argues that his trial counsel was constitutionally
ineffective because "[c]ounsel offered [Collins] a plea offer one day prior to trial" and did not
adequately explain the terms of the offer or the consequences of rejecting it to Collins.  ECF
Doc. 1 at 6, 20 (noting also that Collins had a history of psychosis); ECF Doc. 8 at 2.  Further,
Collins argues that counsel was ineffective because he attempted to withdraw as counsel and
because the trial court failed to apply the proper subjective test to determine whether his "no
contest" plea was knowing, voluntary, and intelligent.  ECF Doc. 1 at 6.  Warden Turner
responds that Collins's Ground One claim is meritless because the Ohio Court of Appeals
reasonably concluded that trial counsel's performance was not deficient.  ECF Doc. 7 at 21.

### 1.    Procedural Default

Collins's ineffective-assistance-of-counsel claim presents three theories for why Collins
believed his trial counsel's representation was constitutionally ineffective, two of which are
procedurally defaulted: (1) his claim that counsel was ineffective for moving to withdraw; and
(2) his claim that counsel was ineffective when the state failed to apply the appropriate test in
evaluating whether his plea was knowing, voluntary, and intelligent.  Although Collins did not
actually raise a standalone ineffective-assistance-of-counsel claim before the Ohio Court of
Appeals and Ohio Supreme Court, he did argue – as part of his argument challenging the trial
court's denial of his motion to compel the state to reinstate its plea offer – that trial counsel

20

rendered ineffective assistance in advising him regarding the plea offer and specifically invoked the ineffective-assistance standard announced in *Strickland v. Washington*, 466 U.S. 668, 687 (1984). *See* ECF Doc. 7-1 at 116-17, 158. Also, in order to adjudicate Collins's claim that the trial court improperly denied his motion to compel the state to reinstate its plea offer, the Ohio Court of Appeals was required to consider (and did consider) whether counsel's representation in plea negotiations was deficient and prejudicial under *Strickland*. *See* ECF Doc. 7-1 at 9-10 (citing *Lafler v. Cooper*, 566 U.S. 156, 162-63 (2012) (specifically invoking *Strickland* in setting forth the ineffective-assistance standard in the context of rejected plea agreements)). Thus, Collins fairly presented his argument that trial counsel rendered constitutionally ineffective assistance in advising him regarding the state's plea offer. *Williams*, 460 F.3d at 806.

But Collins did not present to the Ohio Court of Appeals or the Ohio Supreme Court any other theory for why he believed trial counsel rendered constitutionally ineffective assistance. *See generally* ECF Doc. 7-1 at 116-17, 158. Further, *res judicata* would preclude him from raising his theories that trial counsel was ineffective for moving to withdraw and for the state court applying the incorrect standard in accepting his plea because: (1) he was represented by new counsel on appeal; and (2) his claims could have been resolved on direct appeal based on the trial record. *See State v. Cole*, 2 Ohio St. 3d 112, 114-15 (1982) (holding that *res judicata* bars ineffective-assistance claims not raised on direct appeal when new counsel represents the defendant on appeal and the claim can be resolved without resort to evidence outside the trial record). Thus, Collins failed to "fairly present" his theories that counsel was ineffective for moving to withdraw and for the state court failing to apply the appropriate standard in accepting his plea. *Gerth*, 938 F.3d at 827; *Wainwright*, 433 U.S. at 80, 84-87; *Engle*, 456 U.S. at 125 n.28; *Williams*, 460 F.3d at 806; *O'Sullivan*, 526 U.S. at 848. Moreover, Collins has also not

21

argued, much less shown, that: (1) a factor external to his defense which cannot be fairly attributed to him resulted in his failure to raise those theories on direct appeal; or (2) that his claims rely on new evidence of actual innocence. *See generally* ECF Doc. 1; ECF Doc. 8. Therefore, Collins cannot meet his burden to overcome his procedural default. *Coleman*, 501 U.S. at 750; *Lundgren*, 440 F.3d at 764; *Bousley*, 523 U.S. at 623; *Schlup*, 513 U.S. at 324.

Accordingly, I recommend that the court dismiss as procedurally defaulted Collins's Ground One arguments that trial counsel was constitutionally ineffective: (1) for moving to withdraw; and (2) for the trial court applying an inappropriate standard.[3]

### 2.    Advice Regarding Plea Offer

Collins's main Ground One claim that trial counsel rendered constitutionally ineffective assistance with regard to the state's plea offer is meritless. The Sixth and Fourteenth Amendments guarantee criminal defendants the right to "reasonably effective assistance" of counsel. *Strickland*, 466 U.S. at 687; *Yarborough v. Gentry*, 540 U.S. 1, 8, (2003) ("The Sixth Amendment guarantees reasonable competence, not perfect advocacy judged from the benefit of hindsight."). This right extends to the plea negotiation stage, even when a criminal defendant has rejected the state's plea offer. *See Lafler*, 566 U.S. at 162-63. To succeed on an ineffective-assistance-of-counsel claim, a petitioner must show that: (1) counsel's representation fell below an objective standard of reasonableness based on all the circumstances in the case, such that he did not function as "counsel" guaranteed by the Sixth Amendment; and (2) "the deficient

---

[3] In addition to procedurally defaulting on these two arguments, Collins merely raised them in single lines in his petition without providing any supporting citations or factual development specifying: (1) how trial counsel's motion to withdraw amounted to deficient and prejudicial representation; or (2) why the state court's failure to apply the appropriate standard in evaluating his plea was attributable to counsel. *See generally* ECF Doc. 1; ECF Doc. 8. Thus, those arguments are also waived. *Engler v. Arnold*, 862 F.3d 571, 577 (6th Cir. 2017) ("[I]ssues averted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived."); *see also Geboy v. Brigano*, 489 F.3d 752, 766-67 (6th Cir. 2007) (applying the "developed argumentation" principle to a *pro se* appellant).

performance prejudiced the defense." *Strickland*, 466 U.S. at 687-88.  This standard is highly deferential, and the petitioner must overcome the presumption that counsel "rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment" in light of the circumstances at that time.  *Id.* at 690.  To satisfy the "prejudice" prong, the petitioner must "show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different."  *Id.* at 694; *see also Smith v. Jago*, 888 F.2d 399, 404 (6th Cir. 1989) ("An error by counsel, even if professionally unreasonable, does not warrant setting aside the judgment of a criminal proceeding if the error had no effect on the judgment."), *cert. denied*, 495 U.S. 961 (1990).

Because the Ohio Court of Appeals adjudicated the merits of whether Collins's counsel rendered constitutionally ineffective assistance in advising him regarding the state's plea offer when it determined whether the trial court properly denied his motion to compel the state to reinstate its plea offer, we must give AEDPA deference to that adjudication.  *Perkins v. McKee*, 411 F. App'x 822, 828 (6th Cir. 2011).  In addressing Collins's argument, the Ohio Court of Appels correctly recognized that *Lafler* (and, therefore, *Strickland*) governed Collins's ineffective-assistance-of-counsel claim.  ECF Doc. 7-1 at 149 (¶27).  The Ohio Court of Appeals determined that Collins had not met that standard, however, because trial counsel's representation was not deficient.  ECF Doc. 7-1 at 149-50 (¶¶28-29).  Specifically, the court explained that, although Collins had testified that he was confused about the plea deal, his "confusion was not the result of any deficient performance on the part of" counsel.  ECF Doc. 7-1 at 150.  Instead, the Ohio Court of Appeals found that the record showed that: (1) counsel had promptly notified Collins of the plea offer and deadline; (2) counsel had advised Collins to

accept the offer; and (3) Collins made his choice to reject the offer despite counsel's advice.

ECF Doc. 7-1 at 150.

Collins has not demonstrated that the Ohio Court of Appeals' determination was contrary

to or an unreasonable application of clearly established federal law or an unreasonable

determination of the facts.  The Ohio Court of Appeals applied a test consistent with Supreme

Court precedent when it evaluated whether counsel's advice was deficient.  ECF Doc. 7-1 at

149-50 (¶¶27-29).  The Ohio Court of Appeals reasonably concluded – based on both counsel's

and Collins's testimony – that counsel had promptly and adequately explained the plea offer and

its terms, explained the consequences of rejecting it, and advised Collins to accept it.  ECF Doc.

7-1 at 93-95, 149-50; ECF Doc. 7-3 at 21-30.  And Collins's decision – whether based in

confusion or not – to disregard counsel's advice and reject the plea offer cannot be attributed to a

deficiency in counsel's advice to accept the offer.  *See Almon v. United States*, 302 F. Supp. 2d

575, 586 (D.S.C. 2004) ("Here, the Petitioner ignored his counsel's advice to plead guilty, and

instead proceeded to trial.  He cannot demonstrate that advice he ignored was in itself ineffective

or prejudiced him in any way.").  Moreover, Collins has not presented any clear and convincing

evidence that the Ohio Court of Appeals made a clear factual error in evaluating counsel's

performance.[4]  *Wiggins*, 539 U.S. at 528-29; *Burt*, 571 U.S. at 18.  Thus, the Ohio Court of

Appeals reasonably concluded that Collins did not show that counsel rendered deficient

assistance in advising him with respect to the state's plea offer.  *Harrington*, 562 U.S. at 103;

*Lindh*, 521 U.S. at 333 n.7; *Woodford*, 537 U.S. at 24.

---

[4] Collins's and his mother's affidavit testimony and his hospital records showing that he had a history of psychosis and panic attacks do not: (1) clearly and conclusively demonstrate that he had an active psychosis of which counsel was or should have been aware; or (2) make his decision to ignore counsel's advice to accept the plea attributable to counsel.  *See* ECF Doc. 7-1 at 178-190.

Accordingly, I recommend that the Court deny on the merits Collins's Ground One claim that counsel rendered ineffective assistance with respect to the state's plea offer.

### B.    Ground Two

In his Ground Two claim, Collins argues that the trial court erred by failing to suppress the evidence discovered during the search made pursuant to a warrant.  He contended the warrant was invalid because the affidavit supporting the warrant application included his alleged prior bad acts for a portion of its probable cause assertion.  ECF Doc. 1 at 8.  He further argues that the Court of Appeals affirmed the trial court's denial of his suppression motion by "stating only that the petitioner was a bad person."  ECF Doc. 1 at 8, 22.  Warden Turner argues that Collins's Ground Two claim is not cognizable on federal habeas review because: (1) Ohio provided an adequate process for Collins to raise and appeal his Fourth Amendment claim; and (2) Collins was not prevented from following that procedure, but instead raised the Fourth Amendment claim in a motion to suppress (with supplemental motions) and on his appeals to the Ohio Court of Appeals and Ohio Supreme Court.  ECF Doc. 7 at 22-24.

The Fourth Amendment guarantees a right against "unreasonable searches and seizures." U.S. Const. amend. IV.  To secure that right, the U.S. Supreme Court developed the exclusionary rule – permitting criminal defendants to ask a court to suppress evidence obtained from a search conducted in violation of the Fourth Amendment.  *See Stone v. Powell*, 428 U.S. 465, 482-83 (1976).  Although courts have given numerous justifications for the exclusionary rule, its "primary justification . . . is the deterrence of police conduct that violates Fourth Amendment rights," and it does not confer a personal constitutional right.  *Id.* at 486 (noting that the rule "has never been interpreted to proscribe the introduction of illegally seized evidence in all proceedings or against all persons").  But applying this rule on collateral review – after

challenges at trial and direct appeal failed – would contribute little, if anything, to the deterrence of police misconduct.  *Id.* at 493-94.  Moreover, any benefits to judicial process integrity that the application of the rule in the habeas context would be outweighed by substantial costs to the judicial truth-seeking process, *i.e.*, the exclusion of often the most reliable and probative evidence of guilt.  *Id.* at 490-94.  Accordingly, the Supreme Court has held that, when "the state has provided an opportunity for full and fair litigation of a Fourth Amendment claim, a state prisoner may not be granted federal habeas corpus relief on the ground that evidence in an unconstitutional search or seizure was introduced at his trial."  *Id.* at 494.

The Sixth Circuit has held that whether a criminal defendant was provided an opportunity for full and fair litigation of his Fourth Amendment claim turns on whether there was an available avenue for presenting the claim to state courts – not the adequacy of the procedure actually used to resolve the claim.  *Good v. Berghuis*, 729 F.3d 636, 639 (6th Cir. 2013).  To that end, a Fourth Amendment claim is cognizable on federal habeas review only when: (1) the state had no corrective procedures at all to address Fourth Amendment violations; or (2) the defendant was precluded from using those procedures.  *Id.* at 638 (citing *Capellan v. Riley*, 975 F.2d 67, 70 (2d Cir. 1992)).

Collins's Ground Two claim challenging the state courts' refusal to suppress evidence is not cognizable.  Collins cannot meet the first *Good* prong because that question was foreclosed by the Sixth Circuit's decision in *Riley v. Gray* – which held that Ohio Crim. R. 12, Ohio App. R. 3(A) and Ohio App. R. 5(A)  provided a "clearly adequate" procedure to raise Fourth Amendment claims through a motion to suppress and an immediate appeal of right from the denial of such a motion.  674 F.2d 522, 526 (6th Cir. 1982); *Good*, 729 F.3d at 638.  Collins also cannot satisfy the second *Good* prong because nothing prevented him from availing himself of

26

Ohio's suppression procedures.  *Good*, 729 F.3d at 638.  Indeed, Collins filed a motion to suppress, with supplemental motions which sought a *Franks* hearing to challenge the search warrant affidavit.  ECF Doc. 7-1 at 11-21, 72-84.  The court denied the *Franks* motion, held a full suppression hearing, and denied Collins's motion because the search warrant affidavit had sufficient information to support probable cause even if all the facts Collins challenged were excluded.  ECF Doc. 7-1 at 85-87; ECF Doc. 7-1 at 13.  Collins appealed the trial court's decision denying his *Franks* motion only, and the Ohio Court of Appeals considered his arguments and affirmed the trial court's ruling.  ECF Doc. 7-1 at 147-48.  Thus, Collins had a fully and fair opportunity to litigate his Fourth Amendment claim in state court.  *Good*, 729 F.3d at 638; *Stone*, 428 U.S. at 494.

Because Collins had a full and fair opportunity to litigate his Fourth Amendment claim, this court is not permitted to re-examine his Fourth Amendment suppression argument on habeas review.  Accordingly, I recommend that the Court dismiss as noncognizable Collins's Ground Two claim.

### C.    Ground Three

In his Ground Three claim, Collins argues that the state courts failed to apply the proper test for determining whether his "no contest" plea was knowing, voluntary, and intelligent.  ECF Doc. 1 at 9, 21.  Collins argues that the Ohio Court of Appeals should have applied the "subjective test" announced in *State v. Nero*, 56 Ohio St. 3d 106, 108 (1990), and that its decision to not apply that test resulted in him being treated differently from other criminal defendants in violation of his Due Process rights.  ECF Doc. 1 at 21.  Warden Turner responds that Collins's claim – which essentially raises an Ohio-law claim under the guise of due process – is noncognizable.  ECF Doc. 7 at 25-26.

### 1.    Procedural Default

On one hand, Collins's Ground Three claim is procedurally defaulted.  Collins did not raise his claim on direct appeal to the Ohio Court of Appeals.  *See* ECF Doc. 7-1 at 111, 113-17.  And, although he attempted to raise the claim for the first time before the Ohio Supreme Court, Ohio law did not permit him to do so.  *See Leroy v. Marshall*, 757 F.2d 94, 99 (6th Cir. 1985) (The "Ohio Supreme Court has stated that it will not consider constitutional claims not raised and preserved in the Ohio Court of Appeals." (citing *State v. Phillips*, 27 Ohio St.2d 294 (1971)).  Although the Supreme Court did not provide an explanation for why it declined to exercise jurisdiction over Collins's appeal, this court presumes that the Ohio Supreme Court would have enforced the procedural bar.  *Bonilla v. Hurley*, 370 F.3d 494, 497 (6th Cir. 2004) ("Whe[n] a state court is entirely silent as to its reasons for denying requested relief, we assume that the state court would have enforced any applicable procedural bar.").  Moreover, when Collins attempted to raise the issue of whether his plea was voluntary in the trial court and the Ohio Court of Appeals *after* his direct appeal was completed, those courts held that *res judicata* precluded his claim.  ECF Doc. 7-1 at 174-77, 197-99, 207-08, 220, 224-25.  And the Sixth Circuit "has repeated held that Ohio's *res judicata* rule is an adequate and independent state procedural ground for purposes of procedural default."  *Wogenstahl v. Mitchell*, 668 F.3d 307, 341 (6th Cir. 2012).  Accordingly, Collins's Ground Three claim is procedurally defaulted.

Collins also cannot overcome his procedural default.  Collins has not argued, much less shown, that: (1) a factor external to his defense which cannot be fairly attributed to him caused his failure to raise those theories on appeal; or (2) that his claims rely on new evidence of actual, *factual* innocence.  *See generally* ECF Doc. 1; ECF Doc. 8.  Instead, Collins merely seeks to challenge the state court's failure to cite or apply a particular state-law standard when it accepted

his no contest plea – a legal error that cannot overcome procedural default.  ECF Doc. 1 at 9, 21;
*Bousley*, 523 U.S. at 623.

Because Collins procedurally defaulted on his Ground Three claim regarding the state
courts' evaluation of his guilty plea, and cannot overcome his procedural default, I recommend
that the court dismiss Collins's Ground Three claim as procedurally defaulted.

### 2.    Cognizability

Even if the court wished to proceed to the merits of Collins's Ground Three claim, it
could not do so because Collins's Ground Three claim is noncognizable.  Here, Collins takes
issue with the state courts' alleged failure to expressly apply the state court standard for
evaluating whether a plea is knowing, voluntary, and intelligent – the Ohio Supreme Court's
decision in *Nero*.  ECF Doc. 7-1 at 9, 21.  Further, Collins has not pointed to any decisions by
the U.S. Supreme Court holding that a state court's failure to apply the standard that the Ohio
Supreme Court announced in *Nero* when evaluating a "no contest" plea is among the very
narrow category of state-law errors that results in a denial of fundamental fairness sufficient to
convert the state-law error into a constitutional Due Process violation.  *See Semour*, 224 F.3d at
552; *Bugh*, 329 F.3d at 512; *Dowling*, 493 U.S. at 352.  Moreover, even if this court were able to
review Collins's Ground Three claim on the merits, the record demonstrates that the court
conducted an exhaustive plea colloquy in which it explained Collins's trial rights and the
consequences of his plea – including that he would be found guilty of each count.  ECF Doc. 7-1
at 49-52.  And Collins testified at that he understood and wished to plead "no contest" to each of
the charges against him.  ECF Doc. 7-1 at 49-59.

Accordingly, I recommend that Collins's Ground Three claim also be dismissed as
noncognizable.

## VI.    Certificate of Appealability

### A.    Legal Standard

A habeas petitioner may not appeal the denial of his application for a writ of habeas corpus unless a judge issues a certificate of appealability and specifies the issues that can be raised on appeal.  28 U.S.C. § 2253(c).  "A certificate of appealability may issue . . . only if the applicant has made a substantial showing of the denial of a constitutional right."  28 U.S.C. § 2253(c)(2).  The Supreme Court has interpreted this standard to mean that the "'petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong.'"  *Tennard v. Dretke*, 542 U.S. 274, 282 (2004) (quoting *Slack v. McDaniel*, 529 U.S. 473, 484 (2000)).  The granting of a certificate of appealability does not require a showing that the appeal would succeed on any claim.  *Miller-El v. Cockrell*, 537 U.S. 322, 337 (2003).

### B.    Analysis

When a petition is to be dismissed on a procedural basis, the inquiry under § 2253(c) is two-fold.  In such cases, a certificate of appealability "should issue when the prisoner shows, at least, that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling."  *Slack*, 529 U.S. at 485.  As the Supreme Court explained, "[w]here a plain procedural bar is present and the district court is correct to invoke it to dispose of the case, a reasonable jurist could not conclude either that the district court erred in dismissing the petition or that the petitioner should be allowed to proceed further. In such a circumstance, no appeal would be warranted."  *Id*. at 486.  If the Court accepts my recommendations, Collins will not be able to show that the Court's rulings on his procedurally

30

defaulted, meritless, and non-cognizable claims are debatable.  Thus, I recommend that a certificate of appealability not be issued.

## VII.    Summary of Findings & Recommendation

Collins's claims all fail as a matter of law for the following summarized reasons:

**Ground One:**  Procedural default, in part; waived, in part; and lack of merit.

**Ground Two:**  Noncognizable.

**Ground Three:**  Procedural default and noncognizable.

I recommend that the Court: (1) DISMISS Collins's Ground One claim, in part, and his Grounds Two and Three claims; and (2) DENY, in part, Collins's Ground One claim; and (3) DENY Collins's petition of writ of habeas corpus (ECF Doc. 1).  I further recommend that Collins not be granted a certificate of appealability.


Dated: July 27, 2020

Thomas M. Parker
United States Magistrate Judge


---


## OBJECTIONS

Any objections to this Report and Recommendation must be filed with the Clerk of Courts within fourteen (14) days after being served with a copy of this document.  Failure to file objections within the specified time may waive the right to appeal the District Court's order.  See *U.S. v. Walters*, 638 F.2d 947 (6th Cir. 1981).  See also *Thomas v. Arn,* 474 U.S. 140 (1985), reh'g denied, 474 U.S. 1111 (1986).