# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF OHIO
# EASTERN DIVISION

| | |
|---|---|
| ARNON COLLINS, | Case No. 3:19-cv-00150 |
| Petitioner, | Judge J. Philip Calabrese |
| v. | Magistrate Judge Thomas M. Parker |
| NEIL TURNER, Warden, | |
| Respondent. | |

## OPINION AND ORDER

Petitioner Arnon Collins, Jr. pled guilty in State court to drug charges and to failure to comply with the order of a police officer—offenses for which he received a total sentence of 12 years in prison. In his petition for a writ of habeas corpus, Petitioner contends that his conviction violates his Sixth Amendment right to the effective assistance of counsel, his Fourth Amendment right against unreasonable searches, and his due-process right against conviction except upon a knowing, intelligent, and voluntary plea—each as incorporated in the Fourteenth Amendment's Due Process Clause.

The Magistrate Judge recommends that the Court deny a writ on various grounds. Petitioner objects. For the reasons that follow, the Court **OVERRULES** Petitioner's objections and **ADOPTS** the Magistrate Judge's report and recommendation. Further, the Court determines that Petitioner has not made a substantial showing of the denial of a constitutional right. That is, in the Court's view, Petitioner has not shown that reasonable jurists would conclude that this

assessment is debatable or wrong. Therefore, the Court **DECLINES** to issue a certificate of appealability under 28 U.S.C. § 2253(c).

## FACTUAL AND PROCEDURAL BACKGROUND

On July 14, 2015, Deputy Shane Hatfield of the Preble County Sheriff's Office saw Arnon Collins riding a motorcycle without a license plate. (ECF No. 7-1, PageID #84.) Deputy Hatfield knew there were multiple outstanding warrants for Mr. Collins's arrest, so he attempted to initiate a traffic stop by activating his lights and siren. (*Id.*) Mr. Collins fled, resulting in a high-speed chase that ended in pursuit on foot. (*Id.*) Upon his eventual arrest, Deputy Hatfield searched a backpack that Mr. Collins wore throughout the chase. (*Id.*) Inside the backpack, Deputy Hatfield found a container of 4.9 ounces of "wet" methamphetamine, a glass smoking pipe, a container of marijuana, pills, a digital scale, and a cell phone. (*Id.*)

Deputy Hatfield and Detective Robert Schneider then searched Mr. Collins's home. (*Id.*) Mr. Collins's mother, Phyllis Collins, also lives in the residence and consented to a search. (*Id.*, PageID #85.) Mr. Collins and Respondent disagree about the scope of the consent his mother gave. Mr. Collins claims that his mother only gave the officers permission to search his bedroom. (*Id.*, PageID #77.) In contrast, Respondent maintains Ms. Collins gave the officers permission "to search the property," not just Mr. Collins's bedroom. (*Id.*, PageID #85.) While searching the exterior of the property, officers found Mr. Collins's car, in which they could see empty gallon jugs, a torch connected to a propane tank, a different backpack than the one Deputy Hatfield had already searched, an unidentified item wrapped in a tarp, and

a small safe.  (*Id.*)  Mr. Collins states that the car was not in plain sight because it was located behind "a LARGE brown pole barn." (*Id.*, PageID #77.)

Officers suspected that Mr. Collins was manufacturing methamphetamine based on the items they found in his backpack and in his car in addition to other evidence they previously had and Mr. Collins's criminal history.  (*Id.*, PageID #84.) That history includes criminal convictions for illegally manufacturing drugs, attempted illegal assembly or possession of chemicals for the manufacture of drugs, and aggravated possession of drugs.  (*Id.*, PageID #84–85.)  Further, four days before the search, Deputy Hatfield attempted to serve warrants on Mr. Collins at his home and professed he could smell a slight odor of anhydrous ammonia coming from a trash can behind Mr. Collins's residence.  (*Id.*, PageID #85.)  Police also knew that Mr. Collins previously attempted to buy pseudoephedrine sixteen times in the previous five months.  (*Id.*)  Mr. Collins successfully made twelve of those purchases. (*Id.*)  Based on these circumstances, Deputy Hatfield obtained a search warrant for Mr. Collins's car.  (*Id.*)  The search produced more items associated with the manufacture of methamphetamine, including several containers with small amounts of anhydrous ammonia.  (*Id.*)

On August 3, 2015, a grand jury returned an indictment charging Petitioner with illegally manufacturing drugs, illegal assembly or possession of chemicals for the manufacture of drugs, one count of failure to comply with an order or signal of a police officer, and one count of illegal use or possession of drug paraphernalia.

(ECF No. 7-1, PageID #66–67.) On October 15, 2015, a superseding indictment was filed adding one count of aggravated possession of drugs. (*Id.*, PageID #69–70.)

### A. Motions to Suppress and Change in Counsel

On January 29, 2016, Petitioner filed a motion to suppress the evidence seized in the warrantless searches. (*Id.*, PageID #74.) Later, on February 23, 2016, Petitioner filed a supplemental motion to suppress and a motion for a *Franks* hearing to challenge the search of his car pursuant to a warrant. (*Id.*, PageID #133). On April 15, 2016, the trial court denied the motions. (*Id*, PageID #147.) At that point, the matter was set for trial on May 9, 2016. (*Id.*, PageID #148.)

One week before the scheduled trial date, on May 2, 2016, Petitioner's defense attorney moved to withdraw as counsel. (*Id.*, PageID #149.) In the same motion, Petitioner also moved for a continuance of the trial. (*Id.*) On May 6, 2016, the State trial court granted the motion to withdraw, appointed new defense counsel, and continued the matter until June 27, 2016. (*Id.*, PageID #151.)

### B. Petitioner's Plea

On June 17, 2016, Petitioner moved to compel the prosecution to reinstate a plea offer that expired on October 2, 2015. (*Id.*, PageID #152–153.) On August 1, 2016, the State trial court denied the request, stating that such a motion can only be granted "when it is established that counsel was ineffective." (*Id.*, PageID #156.) Petitioner then pleaded no contest to all five charges on September 12, 2016. (*Id.*, PageID #157–58.) The same day, the State trial court made a finding of guilt and sentenced Petitioner to three years in prison for illegally manufacturing drugs and 11 years for aggravated possession of drugs, to be served

concurrently, and one year for failure to comply with an order or signal of a police officer, to be served consecutively, for a total of 12 years. (*Id.*, PageID #163–64.) The State trial court did not impose a penalty for a major drug offender specification and waived the mandatory fines. (*Id.*)

### C. Direct Appeal

With different appellate counsel, Petitioner appealed and assigned as error the denial of his motions for a *Franks* hearing and to compel the prosecution to reinstate its previous plea offer. (*Id.*, PageID #167, 170 & 172.) On June 19, 2017, the intermediate appellate court affirmed the State trial court's judgment. (*Id.*, PageID #201.) Petitioner timely sought discretionary review at the Ohio Supreme Court. (*Id.*, PageID #212.) He appealed based on the State trial court's claimed failure to apply a subjective standard to determine if a plea is knowing, intelligent, and voluntary as well as based on the search warrant issued for his car. (*Id.*, PageID #218 & 220.) On January 31, 2018, the Ohio Supreme Court declined to hear the appeal. (*Id.*, PageID #233.)

### D. Collateral Attacks on Petitioner's Plea in State Court

On June 19, 2018, Petitioner moved to withdraw his plea of no contest on the grounds that his plea was not knowingly, intelligently, and voluntarily made, as he had argued in his brief to the Ohio Supreme Court. (*Id.*, PageID #234 & 236.) The State trial court denied the motion on July 18, 2018. (*Id.*, PageID #259.)

Petitioner appealed this ruling. (*Id.*, PageID #260 & 264.) On March 4, 2019, the intermediate appellate court dismissed the appeal for lack of jurisdiction, stating that the courts could not issue another judgment because Mr. Collins sought to

5

withdraw his plea after his conviction was affirmed on appeal. (*Id.*, PageID #285–86.) For this reason, the Court determined that the lower judgment was void and declined jurisdiction. (*Id.*)

### E. Habeas Petition and Objections to the R&R

On January 21, 2019, Petitioner filed a petition for a writ of habeas corpus. (ECF No. 1, PageID #17.) In his petition, Petitioner asserts that he did not receive effective assistance of trial counsel in plea negotiations (Ground One), the warrant for the search of Petitioner's car was improperly based on prior bad acts evidence (Ground Two), and his plea was not knowing, intelligent, and voluntary (Ground Three). (*Id.*, PageID #7–9, 19–21.)

On July 27, 2020, the Magistrate Judge issued a report and recommendation, recommending that the Court dismiss Ground One in part as procedurally defaulted and in part on the merits, dismiss Grounds Two and Three as noncognizable. (*Id.*, PageID #409, 430–37.) Petitioner filed objections to the report and recommendation. (ECF No. 10, PageID #445.) Petitioner first objects that the Magistrate Judge improperly failed to consider Petitioner's psychosis as an external factor with respect to Ground One regarding ineffective assistance of counsel. Next, Petitioner objects that the Magistrate Judge erred in his determination of his Fourth Amendment claim and that there was no fair or adequate procedure available to Petitioner to resolve this issue. (*Id.*, PageID #443–44.) Finally, Petitioner objects that the Magistrate Judge improperly failed to consider Petitioner's psychosis when evaluating the voluntariness of his plea. (*Id.*, PageID #444–45).

## STANDARD OF REVIEW

A district court judge may designate a magistrate judge to submit "proposed findings of fact and recommendations for the disposition, by a judge of the court," 28 U.S.C. § 636(b)(1)(B), of a petition for a writ of habeas corpus, which the Court does by local rule, *see* LR 72.2. When reviewing a report and recommendation, if a party objects within the allotted time, the district court is required to "make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made." 28 U.S.C. § 636(b)(1)(C); *United States v. Walters*, 638 F.2d 947, 949–50 (6th Cir. 1981). "Objections must be specific, not general" and should direct the Court's attention to a particular dispute. *Howard v. Secretary of Health & Hum. Servs.*, 932 F.2d 505, 509 (6th Cir. 1991). "The filing of objections to a magistrate's report enables the district judge to focus attention on those issues—factual and legal—that are at the heart of the parties' dispute." *Thomas v. Arn*, 474 U.S. 140, 147 (1985).

Upon review, the court "may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." 28 U.S.C. § 636(b)(1)(C). Importantly, the Court's job is not to conduct a free-wheeling examination of the entire report and recommendation, but only to address any specific objections that a party has advanced to some identified portion of it. Accordingly, it is the Court's task in this matter to review the Magistrate Judge's report and recommendation de novo, based on the specific objections Petitioner raises.

## ANALYSIS

Before a petition for habeas corpus can be evaluated on the merits, a petitioner must establish that the claim is not procedurally defaulted. To do this, a petitioner must demonstrate that he has "exhaust[ed] all available opportunities to pursue his claim in state court." *Gerth v. Warden, Allen Oakwood Corr. Inst.*, 938 F.3d 821, 826–27 (6th Cir. 2019). A petitioner's failure to meet State procedural requirements to raise and preserve a claim for relief in State court will bar consideration of the claim on a habeas petition. *Id.* at 827. Therefore, the Court may not review a claim where the petitioner failed to (1) comply with a State procedural rule that prevented the State courts from reaching the merits of the petitioner's claim, or (2) fairly present the claim before the State courts while State remedies were still available. *Wainwright v. Sykes*, 433 U.S. 72, 80, 84–87 (1977); *Engle v. Isaac*, 456 U.S. 107, 125 n.28 (1982); *Williams v. Anderson*, 460 F.3d 789, 806 (6th Cir. 2006). Procedural default may be excused where a petitioner can show that an external factor prevented him from complying with the procedural rule at issue, through no fault of his own, and that the alleged constitutional violation resulted in actual prejudice. *Coleman v. Thompson*, 501 U.S. 722, 753 (1991).

Where a petitioner has properly raised and preserved an issue for review on the merits, the district court cannot grant a writ of habeas corpus unless the adjudication in the State courts "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States[,] or resulted in a decision

that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C.S. § 2254(d).

## I. Ineffective Assistance of Counsel (Ground One)

The Sixth and Fourteenth Amendments to the Constitution afford criminal defendants the right to "reasonably effective assistance" of counsel. *Strickland v. Washington*, 466 U.S. 668, 687 (1984); *Yarborough v. Gentry*, 540 U.S. 1, 8 (2003). This right extends to the plea negotiation stage. *Lafler v. Cooper*, 566 U.S. 156, 162–63 (2012). To succeed on a claim of ineffective assistance of counsel, a petitioner must show that (1) the performance of counsel fell below an objective standard of reasonableness, such that counsel was not functioning as the counsel guaranteed by the Sixth Amendment, and (2) the ineffectiveness of the counsel prejudiced the petitioner's defense. *Strickland*, 466 U.S. at 687–88. Counsel enjoy the presumption that they discharge their duties in a sufficiently effective manner and exercise reasonable professional judgment based on the circumstances at the time. *Id.* at 690. To establish prejudice, a petitioner must "show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694.

In his habeas petition, Petitioner argues that his first attorney provided representation so deficient it violated the Sixth Amendment. (ECF No. 1, PageID #19–20.) According to Petitioner, this lawyer's representation was ineffective in three ways. *First*, Petitioner argues that counsel did not consult with him sufficiently in advance of the deadline to accept the State's plea offer so as to advise

9

Petitioner of his options adequately. (*Id.*, PageID #20.) *Second*, Petitioner points to counsel's motion to withdraw as evidence that he provided ineffective assistance. (*Id.*) *Third*, Petitioner argues that counsel should have been aware of Petitioner's psychosis and should have advocated application of a subjective test to determine whether a plea is knowing, voluntary, and intelligent. (*Id.*)

In his report and recommendation, the Magistrate Judge explained that two of the three claims asserted in Ground One, the second and third, are procedurally defaulted because Petitioner did not raise the issues in any State court proceedings. (ECF No. 9, PageID #429.) Further, the Magistrate Judge held that res judicata bars those two claims because Petitioner had counsel on appeal and the claims could have been resolved on direct appeal based on the trial record. (*Id.*) The Magistrate Judge concluded this analysis by noting that Petitioner could not overcome the procedural default. (*Id.*, PageID #430.)

### I.A. Motion to Withdraw and Voluntariness of Plea

Petitioner objects to the report and recommendation with respect to the second and third claims in Ground One because, according to Petitioner, he raised the issue of psychosis and confusion regarding the plea deal in State court proceedings and because the Magistrate Judge did not adequately consider his psychosis as an "external factor" to excuse the procedural default. (ECF No. 10, PageID #442.)

The Court agrees with the Magistrate Judge that those two bases for this claim are procedurally defaulted. Petitioner did not present these grounds to the State courts. Because he did not fairly present these arguments to avail himself of State remedies, he has failed to preserve them for federal habeas review. *Wainwright*, 433

10

U.S. at 84–87; *Engle*, 456 U.S. at 125 n.28; *Williams*, 460 F.3d at 806. Nor can he overcome this default. Petitioner has failed to prove that his mental condition or any other external factor prevented him from raising these issues through no fault of his own. *See Coleman*, 501 U.S. at 753. Additionally, these claims do not rest on new evidence of actual innocence. *See id.* at 748.

**I.B. Consultation and Advice**

As for the claim that was not procedurally defaulted, the Magistrate Judge held that the claim should fail on the merits because the State appellate court determined that Petitioner's confusion about the proposed plea deal did not result from deficient counsel. (*Id.*, PageID #431.) Further, the Magistrate Judge explained that Petitioner "has not demonstrated that the Ohio Court of Appeals' determination was contrary to or an unreasonable application of clearly established federal law or an unreasonable determination of the facts." (*Id.*, PageID #432.)

On this ground, Petitioner objects that it is "patently absurd" to argue that counsel's representation was not deficient. (ECF No. 10, PageID #442.) According to Petitioner, counsel should have known that he suffered from psychosis and consequently could not understand counsel's advice regarding the plea offer. (*Id.*, PageID #442-43.) Apparently, Petitioner contends counsel did not spend enough time consulting with him about the plea offer in light of his psychosis. (*Id.*)

The Court agrees with the Magistrate Judge's finding that Petitioner did not specifically raise the issue of ineffective assistance of counsel before the Ohio Court of Appeals or the Ohio Supreme Court, but that he did argue counsel's performance as one reason for reinstatement of the State's original plea offer. (ECF No. 7-1,

11

PageID #177–78, #218–19.) In that argument, Petitioner maintained that his original counsel had not spent enough time on his case and had not adequately explained the plea agreement. (*Id.*, PageID #177–78, #218–20.) Accordingly, the State appellate court considered and ruled on whether counsel provided ineffective assistance during the plea-bargaining phase of proceedings in the State trial court— the first argument Petitioner advances in support of his claim of ineffective assistance of counsel. Although the State courts did not agree with Petitioner's argument, the intermediate appellate court considered on its merits the first argument Petitioner raises in support of his ineffective assistance of counsel claim. (*Id.*, PageID #210.)

Though preserved for habeas review, the argument fails under the standard for relief in 28 U.S.C. § 2254(d). In rejecting this argument, the State appellate court discussed the hearing at the State trial court on the issue. (ECF No. 7-1, PageID #210.) At the hearing, the State trial court took testimony and evidence showing that trial counsel advised Petitioner of the plea offer shortly after the prosecution made it, notified Petitioner of the deadline to accept the offer, and recommended that Petitioner accept the offer. (*Id.*) Further, the State trial court found that trial counsel spent an hour with his client the day before the deadline to accept or reject the plea offer, during which time the offer and the consequences for rejecting it were discussed thoroughly. (*Id.*) Rather than accept the offer, Petitioner rejected it, moved to suppress, and requested a *Franks* hearing. (*Id.*, PageID #210–11.) In rejecting Petitioner's argument, the State appellate court identified and applied the governing decision of the Supreme Court. (*Id.*) This adjudication is not contrary to, or "an

unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States"; nor did it result "in a decision that was based on an unreasonable determination of the facts in light of the evidence presented." 28 U.S.C.S. § 2254(d).

The errors Petitioner ascribes to his trial counsel fall far below the standard of necessary to make a colorable showing of ineffective assistance of counsel, even without the deference the law affords counsel's strategic judgments. According to the record, trial counsel met with Petitioner on four different occasions to discuss the possibility of either accepting the plea bargain the State offered or moving on to other options, such as filing a motion to suppress. (ECF No. 7-3, PageID #355.) Counsel also encouraged Petitioner to take the plea bargain while maintaining that the choice belonged to Petitioner. (ECF No. 1, PageID #20.) Contrary to Petitioner's claim, the record does not show that his trial counsel failed appropriately to advise Petitioner of his options or to spend enough time discussing the matter with Petitioner.

For these reasons, Ground One is procedurally defaulted in part and denied in part on the merits.

## II. The Fourth Amendment (Ground Two)

The Fourth Amendment protects against unreasonable searches and seizures. U.S. Const. amend IV. To ensure that protection, criminal defendants can move to suppress evidence obtained in violation of the Fourth Amendment, such as evidence obtained from an improperly issued warrant. *Stone v. Powell*, 428 U.S. 465, 482–83 (1976). However, where a defendant has had a full and fair opportunity to litigate a

13

Fourth Amendment claim in State court, a federal court may not grant habeas relief on the ground that evidence obtained in violation of the Fourth Amendment was introduced at trial. *Id.* at 494. A defendant had a full and fair opportunity to litigate a Fourth Amendment claim where there was an available procedural avenue for making the claim in State court, regardless of the adequacy of that procedure. *Good v. Berghuis*, 729 F.3d 636, 639 (6th Cir. 2013). This means that Fourth Amendment claims are cognizable on federal habeas review only where (1) the State did not have any available corrective procedure to address Fourth Amendment violations, or (2) the defendant was precluded from using any available procedure. *Id.* at 638 (citing *Capellan v. Riley*, 975 F.2d 67, 70 (2d Cir. 1992)).

In the report and recommendation, the Magistrate Judge explained that Ground Two should be dismissed as noncognizable. (ECF No. 9, PageID #435.) According to the Magistrate Judge, because Ohio provides an adequate procedure to raise Fourth Amendment claims, Petitioner could not satisfy the first prong of the test laid out in *Good*. (*Id.*, PageID #434.) Further, the Magistrate Judge states that Petitioner could not satisfy the second prong of the *Good* test because nothing prevented him from availing himself of Ohio's corrective procedures. (*Id.*, PageID #434–35.)

Petitioner objects to the report and recommendation on this ground, arguing that there was no fair or adequate procedure available to Petitioner to raise his Fourth Amendment claim. (ECF No. 10, PageID #444.) Petitioner maintains that only prior bad acts evidence was considered in issuing the search warrant and later

14

evaluating its validity. (*Id.*, PageID #443–44.) Further, Petitioner maintains that the State trial court should have sustained his motion to suppress evidence obtained pursuant to a search warrant that Petitioner contends was issued based solely on prior bad acts evidence. (ECF No. 1, PageID #22–23.)

The Court agrees with the Magistrate Judge's recommendation regarding disposition of this ground. Ohio has an available procedure for resolving claims of Fourth Amendment violations, which the Sixth Circuit has expressly approved as adequate in the past. *See, e.g.*, *Riley v. Gray*, 674 F.2d 522, 526 (6th Cir. 1982). Nothing precluded Petitioner from using this procedure. In fact, the State trial court held a suppression hearing in which it considered Petitioner's claim. (ECF No. 7-2, PageID #322.) At this hearing, Petitioner's counsel questioned witnesses and argued on behalf of his client, but the State trial court nonetheless declined to suppress the evidence. (*Id.*, PageID #326–33.)

Under the standard that controls habeas review of a Fourth Amendment claim, Petitioner's claim is not cognizable. He had a full and fair opportunity to litigate through the corrective procedure available to him, and actually did so. Therefore, his Fourth Amendment claim cannot be considered in federal habeas review. *See Good*, 729 F.3d at 639.

### III. Voluntariness of Plea (Ground Three)

The Fourteenth Amendment's Due Process Clause requires that a plea of guilty be made knowingly, voluntarily, and intelligently. In other words, "only when it develops that the defendant was not fairly apprised of [a plea's] consequences can his

15

plea be challenged under the Due Process Clause." *Mabry v. Johnson*, 467 U.S. 504, 509 (1984). States may apply their own procedures to ensure that defendants' pleas meet this constitutional standard. *See Boykin v. Alabama*, 395 U.S. 238, 240 (1969).

In the report and recommendation, the Magistrate Judge explained that Ground Three is procedurally defaulted because Petitioner did not raise the issue on direct appeal. (ECF No. 9, PageID #436.) According to the Magistrate Judge, Petitioner's subsequent attempts to litigate the issue procedurally failed because the Ohio Supreme Court, had it heard the case, cannot consider claims not raised in an appellate court and because res judicata precluded raising the issue in later proceedings. (*Id.*) The Magistrate Judge concludes that Petitioner cannot overcome the procedural default because he did not argue and could not prove that a factor external to his defense prevented him from following the applicable procedure or that the claim rested on new evidence of actual innocence. (*Id.*)

Petitioner objects to this part of the report and recommendation, arguing that his psychosis was an external factor that prevented him from following the procedure. (ECF No. 10, PageID #445.) Additionally, Petitioner claims that the State courts applied an incorrect standard to determine the voluntariness of his plea. In his view, the State courts failed to consider his state of mind given his psychosis and mental condition (ECF No. 1, PageID #21), which also make his plea objectively involuntary in violation of due process (ECF No. 10, PageID #444). Respondent maintains that Petitioner's claim presents a noncognizable ground for relief because he bases it on State law. (ECF No. 7, PageID #60.)

16

The Court need not determine whether Ground Three is cognizable because it is procedurally defaulted. The Ohio Supreme Court will not hear constitutional claims not presented to an intermediate appellate court. *Leroy v. Marshall*, 757 F.2d 94, 99 (6th Cir. 1985). Petitioner did not raise his claim about the voluntariness of his plea—on State or federal constitutional grounds—on direct appeal. (*See* ECF No. 7-1, PageID #174–78.) Because the Ohio Supreme Court did not provide a reason for declining to review Petitioner's case, the Court assumes it applied a procedural bar. *Bonilla v. Hurley*, 370 F.3d 494, 497 (6th Cir. 2004) (citing *Simpson v. Sparkman*, 94 F.3d 199, 203 (6th Cir. 1996)). By the time Petitioner raised this claim, res judicata barred it. (ECF No. 7-1, PageID #258.)

Further, Petitioner cannot overcome this procedural default. He has not shown that a factor external to his defense, which cannot be attributed to him, caused the failure to raise the issue on direct appeal or that his claim rests on new evidence of actual innocence. *See Coleman*, 501 U.S. at 750. Without such a showing, the third ground in Petitioner's habeas petition is procedurally defaulted.

## CERTIFICATE OF APPEALABILITY

Without a certificate of appealability, a habeas petitioner cannot appeal a final order in a habeas proceeding. 28 U.S.C.S. § 2253(c)(1). Issuance of a certificate of appealability requires a petitioner to make "a substantial showing of the denial of a constitutional right." 28 U.S.C.S. § 2253(c)(2). This means that the petitioner must show that reasonable jurists would find the district court's determination of the relevant constitutional claims debatable or incorrect. *Tennard v. Dretke*, 542 U.S. 274, 282 (2004). The petitioner need not show that the appeal would succeed to be

eligible for a certificate of appealability. *Miller-El v. Cockrell*, 537 U.S. 322, 337 (2003).

Based on this standard, Petitioner does not qualify for a certificate of appealability. "Where a plain procedural bar is present and the district court is correct to invoke it to dispose of the case, a reasonable jurist could not conclude either that the district court erred in dismissing the petition or that the petitioner should be allowed to proceed further." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000). In these cases, judges should not issue certificates of appealability. *Id.* at 486. Because the majority of Petitioner's claims are procedurally defaulted, and because the remaining claims do not merit federal habeas relief, Petitioner is not entitled to a certificate of appealability.

## CONCLUSION

For the foregoing reasons, the Court the Court **OVERRULES** Petitioner's objections (ECF No. 10) and **ADOPTS** the Magistrate Judge's report and recommendation (ECF No. 9). Further, the Court **DECLINES** to issue a certificate of appealability under 28 U.S.C. § 2253(c). Based on the disposition of his habeas petition, the Court **DENIES AS MOOT** Petitioner's motion requesting a ruling on his objections. (ECF No. 11.)

**SO ORDERED.**

Dated: June 29, 2021

                                          *J. Philip Calabrese*

                                          J. Philip Calabrese
                                          United States District Judge
                                          Northern District of Ohio